

Francis DiGiovanni
302-467-4266 Direct
302-467-4201 Fax
Francis.DiGiovanni@dbr.com

June 21, 2019

Magistrate Judge Christopher J. Burke
U.S. District Court for the District of Delaware
J. Caleb Boggs Federal Building
844 North King Street
Wilmington, DE 19801

Re:   International Business Machines Corp. v. Expedia Inc., et al.,
      Civ. No. 17-1875-LPS-CJB

Dear Judge Burke:

Pursuant to D.I. 127, Defendants propose that, at the *Markman* hearing, the parties address **by patent** all terms that the Court selects for argument, including any rebuttal, before addressing a different patent. The '967 and '849 patents, however, are related and would be more efficiently addressed together. Defendants further propose the following ordering of patents and ranking of patent claims for each patent (**bolded** terms are terms that Defendants believe are the most important overall for argument at the hearing, either because they are particularly important to the case or they are representative of groupings of terms that present similar or identical disputes):

### A.  U.S. Patent No. 7,047,209

1. **[the] additional information**: Defendants do not believe this term needs to be argued. Defendants rank it highly, however, due to the term's relevance to HomeAway's pending motion on obviousness-type double patenting. D.I. 34. This term is from IBM's prior art '209 patent, and the parties' only dispute is whether "advertising" is within its scope.

### B.  U.S. Patent No. 5,796,967

1. **command function(s):** Defendants request the opportunity to explain why "command function(s)" should *not* be limited to one of several embodiments disclosed in the '967 patent, as IBM proposes.
2. **the objects being retrieved from the objects stored at the respective reception system, or if unavailable from the objects stored at the respective reception system, then from the network**: Defendants request the opportunity to explain why the prosecution history is dispositive of the parties' remaining dispute: whether this phrase requires objects to in fact be retrieved, or only requires that they be retrievable.
3. data object(s) / object(s): This term does not need to be argued. The Court has twice construed it, and both times rejected IBM's construction.

### C.  U.S. Patent No. 7,072,849

1. **characterization(s):** This relates to HomeAway's pending double patenting motion. D.I. 34. With IBM's modified construction of "characterizations," which indicates that usage history

need *not* be a defining characteristic of "characterizations," the parties' remaining dispute may ultimately be narrow and would benefit from discussion at the hearing.

2-7. Terms ranked 2-7 (below) present a common issue: whether the term "advertising" should be afforded patentable weight.  The dispute centers on the Printed Matter Doctrine, and Defendants believe presentation on this issue is appropriate.  The higher-ranked terms in this grouping present a small number of additional disputes for which Defendants believe argument would be helpful to the Court.

> 2: **advertising object identifications**; 3: **structuring advertising separately from the applications so that the advertising may be selectively supplied, through the network, to and retrieved at the reception systems for presentation**; 4: <u>structuring advertising so that it may be selectively supplied to and retrieved at the reception systems for presentation</u>; 5: <u>structuring advertising in a manner compatible to that of the applications so that it may be presented</u>; 6: <u>advertising object(s)</u>; 7: <u>advertising data</u>

8-9. Terms ranked 8-9 do not need to be argued.  The Court has twice rejected IBM's proposals, and IBM offers no new arguments in this case.  The Court should adopt its prior constructions.

> 8: <u>object(s)</u>; 9<u>: selectively storing advertising objects at a store established at the reception system</u>

### D. <u>U.S. Patent No. 5,961,601</u>

1. **communication [logic/means] for communicating the output to the client**: The parties agree the disclosed structure includes "a server using HTTP as depicted in Fig. 7a." Defendants believe the Court's previous construction of this term, which also includes means *at the client*, was in error.  Defendants request the opportunity to explain their position.

2. **[dynamically downloading computer program code to] the client to perform said step of embedding which is responsive to said step of communicating the output to the client**: The parties' dispute whether claims including this limitation are indefinite.  The parties in *Priceline* only briefly addressed this issue, and the Court was not presented with the arguments and evidence Defendants have submitted in this case.  In this case, IBM does not even respond to Defendants' detailed explanation in their Opening Brief (and the Zatkovich Declaration) as to why each of claims 4, 17, 54, and 63 is indefinite.  This term should be argued.

3. **all continuations in an output from said service**: this term subsumes the parties' dispute concerning "continuation(s)" and should be argued.

   > The Court has twice rejected IBM's proposed construction for "<u>continuation(s)</u>," and IBM offers no new arguments in this case.
   > The parties' dispute concerning the larger phrase (ranked term 3) is wehther the example provided in the construction should reflect the "all continuations" claim requirement.

4-6. The parties' dispute for the three means-plus-function terms below is whether IBM's specification passages in fact recite additional "examples" of structure beyond that in Defendants' proposed construction.  Additionally, IBM has not acknowledged the dependency of "integration means" in claim 46. Defendants believe argument on at least one of these terms would be helpful.

> **4:** filter logic for filtering one of said hyperlinks and data output from said services according to a predetermined criteria
>
> **5:** integration logic for adding one of said hyperlinks and data to said output from said services according to a predetermined criteria
>
> **6:** integration means for adding one of said hyperlinks and data to said output from said services according to a predetermined criteria

7. The term "service(s)" is important to the case and should not be broadened as IBM proposes to include "data" (which cannot be "performed," as the claims require), but Defendants believe the dispute is straightforward and may be resolved on the papers.

### E. U.S. Patent No. 6,374,359

1. **refresh object**: This term reflects the parties' primary dispute for this patent.

2-4. The parties' disputes for the terms "refresh page," "redirects / redirecting," and the larger phrase in which those terms appear (ranked terms 2-4) are intertwined, and Defendants believe they can and should be argued together.

> **2: returning the cookie to the Web browser in a refresh page the redirects HTTP flow back to itself with a given parameter**; **3:** refresh page; **4:** redirects/redirecting.

5-9. The means-plus-function terms ranked 5-9 present a common issue: whether the specification discloses and clearly links any structure to the claimed function. Defendants contend that no algorithm is disclosed for these claimed functions and, therefore, the claims in which they appear are indefinite. Defendants believe "means for encoding" would be a fair representation of the parties' disputes concerning these terms and should be argued.

> **5: means for encoding the binary string to generate the string**; **6:** means for decoding the string to generate a resulting binary value; **7:** means responsive to a destination address match for determining whether the user name and password in the resulting derived value match the user's user name and password; **8:** means for concatenating into a derived value a userid, a password and other information; **9:** means responsive to match of the user name and password for enabling the user to interact with the application

10-12. The means-plus-function terms ranked 10-12 present a different dispute: the identity of the structure disclosed in the specification for performing the claimed function. The parties diverge significantly on these terms, and Defendants believe that ranked term 10 would be a fair representation of the parties' disputes concerning these terms.

> **10: means responsive to the determining means for enabling the user to interact with the given application if the cookie is valid**; **11:** means for determining if the cookie is valid; **12:** means for constructing a cookie

13-16. Defendants do not believe terms ranked 13-16 need to be argued because arguments concerning the other means-plus-function terms above will assist the Court in resolving the parties' disputes.

> **13:** means for returning the cookie to the Web browser in a refresh page the redirects HTTP flow back to itself with a given parameter; **14:** means for determining whether the destination address in the resulting derived value matches a destination address of a client machine on which the Web browser is running; **15:** means for encrypting the derived value to generate a binary string; **16:** means for decrypting the resulting binary value to generate a resulting derived value

DrinkerBiddle&Reath

Page 4

Respectfully submitted,

*/s/ Francis DiGiovanni*

Francis DiGiovanni (#3189)

cc: Clerk of the Court (by ECF)
     All Counsel of Record (by ECF)

Case 1:17-cv-01875-LPS-CJB   Document 142   Filed 06/21/19   Page 4 of 4 PageID #: 9944

DrinkerBiddle&Reath