

Kelly E. Farnan
302-651-7705
Farnan@rlf.com

July 23, 2019

**VIA ELECTRONIC-FILING**
The Honorable Christopher J. Burke
U.S. District Court for the District of Delaware
844 N. King Street
Wilmington, DE  19801

> Re: *International Business Machines Corporation v. Expedia, Inc., et al.*,
> No. 17-1875-LPS-CJB (D. Del.)

Dear Judge Burke:

Pursuant to the Court's July 3, 2019 Oral Order (D.I. 153) and subsequent related stipulations (D.I. 156, 158), Plaintiff International Business Machines Corporation ("IBM") and Defendants Expedia Group, Inc. (f/k/a Expedia, Inc.), Expedia, Inc., HomeAway.com, Inc., Hotels.com L.P., Hotwire, Inc., Orbitz Worldwide, Inc., Orbitz LLC, and Travelscape LLC (collectively, "Defendants") have met and conferred about case narrowing.  Because the parties have not reached agreement, the parties have set out their respective proposals below.

1. **IBM's Proposal**:

| Deadline | Date | Requirement |
|---|---|---|
| Narrowing of initial disclosures | August 17, 2019 | Both sides reduce the number of third-party witnesses identified on their initial disclosures to **15** third-party witnesses per side, not counting inventors of the patents-in-suit. |
| Final Contentions Claim Reduction | Final infringement contentions | Plaintiff reduces asserted claims to **25** total (and no more than **6** from any one patent). |
| Final Contentions Prior Art Reduction | Final invalidity contentions | Defendants reduce invalidity theories to **40** total (and no more than **10** for any one patent). |
| Expert Discovery Claim Reduction | 3 days after the close of expert discovery | Plaintiff reduces asserted claims to **20** total (and no more than **5** from any one patent) from among the claims identified in the Final Contentions Claim Reduction. |
| Expert Discovery Prior Art Reduction | 7 days after close of expert discovery | Defendants reduce invalidity theories to **30** total (and no more than **7** for any one patent) from among the theories identified in the Final Contentions Prior Art Reduction. |

The Honorable Christopher J. Burke
July 23, 2019
Page 2

2. **Defendants' Proposal**:

| Event | Deadline | Requirement |
|---|---|---|
| Initial Reduction | August 23, 2019 | Plaintiff shall serve supplemental infringement contentions that:<br><br>1. Reduce asserted claims to no more than **30 total** (and no more than 7 from any one patent);<br><br>2. Identify with specificity the accused functionality of each accused instrumentality (*e.g.*, by citing source code and/or technical documents); and<br><br>3. Identify IBM's alleged invention date for each asserted claim. |
| | August 28, 2019 | The parties shall file a joint letter informing the Court which, if any, of the parties' 39 claim construction disputes (*see* D.I. 124) are moot as a result of Plaintiff's Initial Reduction. |
| | September 13, 2019 | Defendants shall serve supplemental invalidity contentions that reduce invalidity theories* to no more than **24 total** per patent. |
| Second Reduction | Final infringement contentions | Plaintiff shall serve final infringement contentions that reduce asserted claims to no more than **20 total** (and no more than 5 from any one patent) from among the claims identified in the Initial Reduction. |
| | Final invalidity contentions | Defendants shall serve final invalidity contentions that reduce invalidity theories* to no more than **16 total** per patent from among the invalidity theories identified in the Initial Reduction. |
| Final Reduction | 3 days after close of expert discovery | Plaintiff shall reduce asserted claims to no more than **15 total** (and no more than 4 from any one patent) from among claims identified in the Second Reduction |
| | 10 days after close of expert discovery | Defendants shall reduce invalidity theories* to no more than **12 total** per patent from among the invalidity theories identified in the Second Reduction. |

For sake of clarity, the limits set forth above apply only to 102/103 prior art combinations and do not limit Defendants' defenses based on 35 U.S.C. § 101, 35 U.S.C. § 112, or obviousness-type double patenting.

All of the limits set forth above may be modified upon a showing of good cause.

The Honorable Christopher J. Burke
July 23, 2019
Page 3

Definitions:

An "invalidity theory" is either an anticipation theory based on a single "invalidity reference" (defined below), an obviousness theory based on a single invalidity reference, or an obviousness theory based on a primary invalidity reference and one or more secondary invalidity references in combination with the primary reference. For example, the combination of primary reference A with secondary reference B and/or C would count as three theories, i.e., A+B, A+C, A+B+C.

Invalidity theories shall consist of only those reference(s) that Defendants utilize to show the existence of claim limitation(s) in the prior art as part of an anticipation argument or prima-facie obviousness argument. The limitations set forth above shall not limit Defendants' reliance on additional evidence (including other invalidity references) for other purposes, including to demonstrate the state of the art, knowledge of a person of ordinary skill in the art, simultaneous invention by others, or *Georgia-Pacific* factors.

An "invalidity reference" may be a document (e.g., a patent or printed publication) or a prior art instrumentality (such as a device, system, or process). Documents (such as source code, manuals, architecture documents, contracts, and press releases) describing or corroborating the functionality and prior-art status (e.g., sale/offer for sale or public use) of a single prior art instrumentality shall collectively count as one "invalidity reference." Defendants' invalidity contentions shall identify with specificity each such invalidity reference (including the release date, version number, and/or other identifying information of a prior art instrumentality, to the extent known) and its related collection of documents. [**Defendants' additional proposal**: Similarly, a collection or compilation of closely-related documents authored or published by a common person or entity (e.g., a single standard adopted by a standard-setting body that is comprised of multiple cross-referenced documents) shall be considered a single invalidity reference, and Defendants' invalidity contentions shall identify the collection of documents pertaining to each such invalidity reference.]

The Honorable Christopher J. Burke
July 23, 2019
Page 4

## IBM's Position

<u>The Initial Narrowing Should Occur When The Parties Serve Final Contentions.</u>

IBM's proposal includes two narrowing steps:  (1) at final contentions (just after the close of fact discovery) and (2) just after the close of expert discovery.  IBM's proposal allows the parties to make informed decisions about how to narrow the case throughout fact discovery—a phase of the case when the number of asserted claims and invalidity references have relatively little impact on judicial economy. At the same time, IBM's proposal narrows the case before the time and expense of expert discovery and dispositive motions—a phase when the scope of claims and prior art directly impacts the parties and the Court.

In contrast, Defendants' proposal would unduly prejudice IBM's ability to prosecute this case.  Defendants' initial narrowing stage would likely occur (1) before the Court issues a Report and Recommendation on all claim construction terms, (2) before IBM has finished reviewing source code (some of which was only produced recently), and (3) before oral argument on pending IPRs for the '967 and '601 patents.  The potential prejudice to IBM of having to choose claims in the dark, before their viability is clear, far outweighs any incremental benefit to judicial economy.  There is no need to prematurely narrow claims and invalidity theories after the parties have already expended significant effort analyzing the currently-asserted claims as they relate to the motions to dismiss, claim construction, and PTAB proceedings.

<u>The Court Should Reject Defendants' Attempt To Impose Additional Burdens On IBM.</u>

Defendants improperly seek to impose additional burdens on IBM that go far beyond the Court's order to brief case narrowing proposals.  Defendants ask the Court to require IBM to "[i]dentify with specificity the accused functionality of each accused instrumentality (e.g., by citing source code and/or technical documents)."  That vague request is premature before the end of fact discovery, before IBM serves its final infringement contentions, and before the final supplementation of accused products is due on September 27.  Notably, Defendants do not apply a similar requirement on their invalidity contentions.  Nor do Defendants provide a basis for their requirement.  In fact, Defendants did not identify *any* alleged deficiencies in IBM's 3,863-page infringement contentions (which were served five months ago) until 11:35 PM on July 22, 2019—the day before this letter was submitted.  At that time, Defendants asked IBM to meet and confer on the topic on July 30.  Separately, Defendants ask for more information on invention dates, even though that issue was not raised until July 15, in a letter where Defendants asked IBM to respond by July 31.  As a result of Defendant's last-minute complaints, the parties have not met and conferred on either issue.

Defendants have apparently decided that they would prefer to short-circuit the Court's discovery dispute process and ask for judicial intervention before IBM has had the opportunity to meet and confer or even respond to those issues.  To be clear, IBM is willing to work with Defendants to discuss their professed concerns but has not been afforded to opportunity to do so. IBM should not be compelled to amend infringement contentions on five patents against six defendants within 30 days, without even having the opportunity to understand and respond to Defendants' supposed concerns.

The Honorable Christopher J. Burke
July 23, 2019
Page 5

  To the extent the Court considers granting Defendants' request, IBM requests an opportunity to argue the issue at a telephonic conference.  Consistent with the Court's January 23, 2019 standing oral order, IBM intends to have a newer attorney argue this issue, if the Court grants IBM's request for oral argument.

<u>Defendants Should Reduce The Number Of Identified Third-Party Witnesses.</u>

  Defendants' initial disclosures identify at least 60 third-party witnesses as relevant to prior art.  Expedia, Inc.'s First Amended Initial Disclosures at 8-9 (Ex. B).  Defendants apparently identified *all* listed inventors and authors of the alleged prior art without making any effort to limit their responses to witnesses that they intend to investigate.  It is not feasible for IBM to depose all 60 witnesses during fact discovery, and there is insufficient information for IBM to even identify most of the witnesses.  *See, e.g.,* Ex. B at 9 (identifying a witness only as "Josh" with unknown contact information).  Defendants should be required to narrow the identified third-party witnesses so that IBM has notice of what witnesses are relevant to the case in time to seek their deposition.

<u>The Court Should Adopt IBM's Proposed Limits For Asserted Claims And Prior Art References.</u>

  IBM's proposal sets limits on asserted claims and prior art reference that closely track the Scheduling Order in the *Priceline* litigation.  *See IBM v. Priceline Group Inc.*, C.A. No. 15-137-LPS, D.I. 65 at ¶12 (D. Del. 2016) (Ex. A).  Defendants' limits on prior art theories are unreasonable and would permit them to assert 80 prior art theories through expert discovery.

The Honorable Christopher J. Burke
July 23, 2019
Page 6

## Defendants' Position

1.   **Limitation of asserted claims.** In both *Priceline* and *Groupon*, the Court limited IBM to 16 total claims (and no more than 5 per patent). At the *Groupon* trial, however, IBM chose to assert only 2 claims per patent for a total of 8 claims. Based on IBM's litigation history on the asserted patents, the appropriate total number of asserted claims in this case, after all narrowing, should be 15 (*i.e.*, an average of 3 claims per patent, with no more than 4 from any one patent). Such a limit is also consistent with the total number of claims the Court has permitted in other five-patent cases. *See Sunoco Partners v. Powder Springs Logistics,* C.A. No. 17- 1390-LPS-CJB, (D. Del Nov. 1, 2018 docket entry) (5 patents; 15 total claims); *Greatbatch Ltd. v. AVX Corp.*, C.A. No. 13-723-LPS, D.I. 368 (D. Del. July 28, 2015) (5 patents; 15 total claims).

2.   **Limitation of invalidity theories**.[1] When the Court has imposed limits based on invalidity theories rather than prior art references, the Court has generally imposed limits *per patent*, in a **4:1 ratio** relative to asserted claims. *See Greatbatch,* D.I. 368 (initial and final ratio of 4:1); *Thermo Fisher Scientific Inc. v. Agilent Techs., Inc.*, C.A. No. 17-600-LPS (D. Del. Feb. 5, 2018 docket entry) (initial 4:1 ratio, final 3.33:1 ratio); *Confluent Surgical, Inc. v. HyperBranch Med. Tech., Inc.*, C.A. No. 17-688-LPS-CJB (D. Del. Oct. 30, 2017 docket entry) (initial 4:1 ratio, final 3:1 ratio). For a limit of **15 asserted claims**, therefore, Defendants should be permitted 15x4 = **60 invalidity theories** (*i.e.*, up to 12 per patent). Defendants submit that IBM's proposal to limit Defendants 7 total theories per patent, but permit IBM to assert up to 5 claims from each patent, would be overly restrictive and prejudicial to Defendants.[2]

3.   **Timing of reductions**. The Court typically orders that initial reductions occur ***before*** fact discovery closes and that final reductions occur ***before*** expert discovery. *See Sunoco Partners* (11/1/18 docket entry) (final reduction at close of fact discovery); *Confluent Surgical* (10/30/17 docket entry) (final reduction at final contentions); *Thermo Fisher* (2/5/18 docket entry) (final reduction before expert reports); *Collegium Pharm., Inc. v. Teva Pharms. USA, Inc.*, C.A. No. 18-300-LPS-CJB (8/6/18 docket entry) (same). The same approach makes sense here. IBM currently asserts 122 claims from 5 patents and has refused to reduce the number of claims. Under IBM's proposal, ***initial*** narrowing would occur after the close of fact discovery—which is when ***final*** narrowing should be occurring. With only three months remaining in discovery, the first reduction should happen immediately so the parties and the Court can reasonably focus their efforts. Final narrowing should occur either (a) all at once (at the final contentions stage, before

---

[1] The parties agree to the definition of "invalidity theory," which largely tracks the definition adopted by the Court in the *Priceline* litigation. *Priceline*, D.I. 65 at 10 n.3. The *Priceline* limitations were based on invalidity theories per patent, while the *Groupon* limitations were based on prior art references per patent. Although limiting based on references would allow Defendants more flexibility, Defendants have agreed to a framework based on limiting "invalidity theories" per the parties' agreed definition, provided Defendants are likewise afforded a reasonable 4:1 ratio of total invalidity theories to total asserted claims, as explained herein.

[2] IBM merely points to *Priceline*, wherein the parties disputed whether invalidity contentions should be limited based on theories (IBM) or references (defendants), and the Court chose IBM's proposal. The *Priceline* Defendants did not offer a proposal that allowed a greater number of invalidity theories, or an argument that IBM's proposal of less than two invalidity theories per asserted claim deviated significantly from the Court's past limits.

The Honorable Christopher J. Burke
July 23, 2019
Page 7

expert discovery), or (b) more gradually, with a further reduction at the final contentions stage and a final reduction at the close of expert discovery.

4. **"Invalidity reference" definition.** Defendants' definition for "invalidity reference" directly addresses the facts of this case. For example, a version of a single standard adopted by a standard-setting body would be a single "invalidity reference" for purposes of counting invalidity theories, even if embodied in a set of multiple interrelated documents. Such clarification is necessary due to the restrictive definition of "invalidity theory," which might otherwise unnecessarily restrict Defendants' ability to later rely on a subset of such interrelated documents.

5. **Alleged invention date.** Despite having twice litigated 4 of the 5 asserted patents, IBM has not disclosed the alleged invention date for each asserted claim. Because such contentions (if proven) could impact the prior-art status of references charted in Defendants' invalidity contentions, the Court's case narrowing should require IBM to promptly disclose such contentions.

6. **Citation to source code.** IBM's infringement contentions do not cite *any* source code, and IBM has stated during meet-and-confers that it does not intend to cite source code until *after the close of fact discovery* (in its final contentions). IBM has had Defendants' source code for over six months and should be required to identify the accused functionality with specificity by the deadline for initial claim reduction so Defendants will have meaningful notice of IBM's infringement theories before narrowing their invalidity case (and certainly before the close of fact discovery).

7. **Initial disclosures reductions**. Defendants do not oppose reasonable reductions, but the reductions should occur *after* (not before) the parties' initial claim and art reductions. Under IBM's proposal, Defendants must eliminate prior art witnesses before either side narrows its contentions. Defendants would agree to limit the number of disclosed third-party witnesses after initial reductions to 25, with the ability to add witnesses as discovery proceeds.

Respectfully,

*/s/ Kelly E. Farnan*

Kelly E. Farnan (#4395)

Enclosures

cc:    Clerk of the Court (via hand delivery)
       Counsel of Record (via electronic mail)