## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

INTERNATIONAL BUSINESS )
MACHINES CORPORATION, )
                        )
       Plaintiff, )
                        )
       v. )       Civil Action No. 17-1875-LPS-CJB
                        )
EXPEDIA, INC., EXPEDIA, INC., )
HOMEAWAY.COM, INC., )
HOTELS.COM L.P., HOTWIRE, INC., )
ORBITZ WORLDWIDE, INC., )
ORBITZ, LLC, AND )
TRAVELSCAPE LLC, )
                        )
       Defendants. )

## REPORT AND RECOMMENDATION

In this patent infringement action filed by Plaintiff International Business Machines

Corporation ("IBM" or "Plaintiff") against Expedia, Inc. ("Expedia Group"), Expedia, Inc.

("Expedia-WA"), Homeaway.com, Inc., Hotels.com L.P. ("Hotels.com"), Hotwire, Inc., Orbitz

Worldwide, Inc., Orbitz, LLC, and Travelscape LLC ("Travelscape") (collectively,

"Defendants"), presently before the Court is Defendants' motion to dismiss, filed pursuant to

Federal Rules of Civil Procedure 12(b)(3) and 12(b)(6) ("Motion"). (D.I. 31) In a previously-

issued April 11, 2019 Report and Recommendation ("April 11, 2019 R&R"), the Court

addressed the portion of that Motion relating to whether, pursuant to Rule 12(b)(6), Plaintiff had

sufficiently pleaded facts alleging that Expedia Group infringes the patents-in-suit. (D.I. 104)

Now, in this Report and Recommendation, the Court will address the remaining portion of the

Motion, which relates to Defendants' assertions that pursuant to Rule 12(b)(3), venue is

improper as to Expedia Group subsidiaries Expedia-WA, Hotels.com and Travelscape. For the

reasons that follow, the Court recommends that this portion of the Motion be GRANTED-IN-

PART and be DENIED-IN-PART without prejudice.

# I. BACKGROUND

## A. Factual Background

Plaintiff IBM is a New York corporation engaged in the business of science and technology. (D.I. 27 at ¶¶ 3, 41) It is the owner of the five patents-in-suit in this case, which bear on certain Internet-related technologies: United States Patent Nos. 5,796,967, 7,072,849, 5,961,601, 7,631,346 and 6,374,359 (collectively, the "patents-in-suit"). (*Id.* at ¶¶ 2, 47-55)

It is alleged in the operative Amended Complaint that Defendant Expedia-WA is a Washington corporation, (*id.* at ¶ 7), Defendant Hotels.com is a Texas limited partnership, (*id.* at ¶ 12), and Defendant Travelscape is a Nevada limited liability company, (*id.* at ¶ 19). Expedia-WA, Hotels.com and Travelscape are subsidiaries of Defendant Expedia Group, a Delaware corporation. (*Id.* at ¶¶ 4-5) It is alleged that all Defendants offer travel and reservation services through their respective websites and mobile applications, (*id.* at ¶¶ 8, 10-20), which are alleged to infringe the patents-in-suit, (*see, e.g., id.* at ¶¶ 65-177).[1]

## B. Procedural Background

Plaintiff filed the initial Complaint in this case on December 29, 2017. (D.I. 1)[2] After Defendants filed certain motions to dismiss the Complaint, (D.I. 20; D.I. 23), Plaintiff then filed the Amended Complaint on July 12, 2018, (D.I. 27).

---

[1]     Additional allegations relevant to Expedia Group and its subsidiaries will be discussed in Section III of this Report and Recommendation.

[2]     This case has been referred to the Court by Chief Judge Leonard P. Stark to hear and resolve all pretrial matters, up to and including the resolution of case-dispositive motions. (D.I. 59)

The Amended Complaint alleges, *inter alia*, that: (1) Expedia Group infringes the five patents-in-suit through its control of the technological platforms used in the other Defendants' websites and mobile applications, which in turn provide travel and reservation services to users; or that (2) to the extent that Expedia Group does not provide such infringing services, the other Defendants do through their respective websites and mobile applications. (*Id.* at ¶¶ 65-177) It is further alleged that venue in Delaware is proper for Expedia-WA, Travelscape and Hotels.com because these subsidiaries are alter-egos of Expedia Group. (*Id.* at ¶ 33)

Defendants filed the instant Motion on August 27, 2018. (D.I. 31) Briefing on the Motion was completed on October 9, 2018, (D.I. 46), and thereafter each side submitted notices of supplemental authority, the most recent of which was filed on March 18, 2019, (D.I. 78; D.I. 80; D.I. 97). The Court then heard argument on the Motion (and on another pending motion to dismiss) on March 29, 2019. (D.I. 101 (hereinafter, "Tr.")) As was previously noted above, the Court's April 11, 2019 R&R resolved a portion of the Motion. (D.I. 104)[3] This Report and Recommendation resolves the remainder of the Motion.

## II.   LEGAL STANDARDS

### A. Federal Rule of Civil Procedure 12(b)(3), Patent Venue and 28 U.S.C. § 1400(b)

A party may file a motion to dismiss for improper venue pursuant to Federal Rule of Civil Procedure 12(b)(3). In patent infringement actions, venue is proper for domestic corporations: (1) in the judicial district where the defendant resides, or (2) where the defendant has committed acts of infringement and has a regular and established place of business. 28

---

[3]      Defendants objected to the Court's decision in the April 11, 2019 R&R; those objections are pending before the District Court. (D.I. 109; D.I. 111)

3

U.S.C. § 1400(b) ("Section 1400(b)").[4] In 1957, the Supreme Court of the United States held in *Fourco Glass Co. v. Transmirra Prods. Corp.*, 353 U.S. 222 (1957), that Section 1400(b) "is the sole and exclusive provision controlling venue in patent infringement actions, and that it is not to be supplemented by the provisions [of the general corporation venue statute,] 28 U.S.C. § 1391(c)[.]" 353 U.S. at 229. In 2017, the Supreme Court reaffirmed the *Fourco Glass* decision. *See TC Heartland LLC v. Kraft Food Grp. Brands LLC*, 137 S. Ct. 1514 (2017).

For purposes of the first prong of Section 1400(b), a domestic corporation "resides" only in its state of incorporation. *TC Heartland LLC*, 137 S. Ct. at 1517-21; *see also Brunette Mach. Works, Ltd. v. Kockum Indus., Inc.*, 406 U.S. 706, 707 n.2 (1972). For purposes of the second prong of Section 1400(b), there are two requirements: (1) the defendant must have committed acts of infringement in the relevant district; and (2) the defendant must have a regular and established place of business in the district. *Bristol-Myers Squibb Co. v. Mylan Pharms. Inc.*, C.A. No. CV 17-379-LPS, 2017 WL 3980155, at *6 (D. Del. Sept. 11, 2017).

Upon a motion by a defendant challenging venue in a patent case, the plaintiff bears the burden to show that venue is proper. *In re ZTE (USA) Inc.*, 890 F.3d 1008, 1013 (Fed. Cir. 2018); *Bristol-Myers Squibb Co. v. Aurobindo Pharma USA Inc.*, No. CV 17-374-LPS, 2018 WL 5109836, at *1 (D. Del. Oct. 18, 2018). "[W]hen confronted with a motion to dismiss for improper venue, the Court may consider both the complaint and evidence outside the complaint."

---

[4]     Here, two of the affected Defendants (Hotels.com and Travelscape) are not corporations, but instead are other types of legal entities (a limited partnership and a limited liability company, respectively). No party has suggested to the Court that the test for venue for domestic corporations, set out above, should be applied any differently in the case of these two Defendants. With any such argument thus being waived, the Court will apply the relevant test to all Defendants at issue.

*Bristol-Myers Squibb Co.*, 2018 WL 5109836, at *2. "The Court will accept any venue-related allegations in the complaint as true, unless those allegations are contradicted by the defendant's affidavits[,]" and the Court may also consider any affidavits submitted by the plaintiff. *Bristol-Myers Squibb Co.*, 2018 WL 5109836, at *2 (citations omitted).

### B. Venue-related Discovery

The Court may also grant venue-related discovery before determining whether venue is appropriate in order "to ascertain the facts bearing on such issues." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 n.13 (1978). Venue-related discovery is appropriate "unless a plaintiff's claim is 'clearly frivolous[.]'" *Bristol-Myers Squibb Co.*, 2017 WL 3980155, at *21 (quoting *Rocke v. Pebble Beach Co.*, 541 Fed. App'x. 208, 212 (3d Cir. 2013) (certain quotation marks omitted). "The law is equally clear, however, that a plaintiff may not 'undertake a fishing expedition based only upon bare allegations, under the guise of [venue] discovery.'" *Id.* (quoting *Eurofins Pharma U.S. Holdings v. VioAlliance Pharma SA*, 623 F. 3d 147, 157 (3d Cir. 2010)). That is, a court should not just permit venue discovery as a matter of course; before allowing the discovery to proceed, the court must be satisfied that there is some indication that venue in the form is appropriate as to the defendant. *Cf. Fidelity Nat. Info. Servs., Inc. v. Plano Encryption Techs., LLC*, Civil Action No. 15-777-LPS-CJB, 2016 WL 1650763, at *3 (D. Del. Apr. 25, 2016) (discussing the similar standard for jurisdictional discovery). "To show that discovery is warranted, a party must, at a minimum, state a non-frivolous basis for venue and do so with reasonable particularity." *Bristol-Myers Squibb Co.*, 2017 WL 3980155, at *21 (internal quotation marks and citation omitted).

## III. DISCUSSION

In alleging that venue is proper in the District of Delaware as to Expedia-WA, Hotels.com and Travelscape ("the venue Defendants"), Plaintiff is *not* asserting (with regard to the first prong of the venue test) that those entities themselves reside in Delaware, since the three entities are not Delaware corporations and are registered or incorporated in other states. Instead, Plaintiff is arguing that: (1) Defendants' parent, Expedia Group, resides in Delaware (because it is a Delaware corporation); and (2) Defendants are the alter-egos of Expedia Group, such that Expedia Group's corporate residency in Delaware should be imputed to the venue Defendants for venue purposes. Additionally, Plaintiff claims that venue is appropriate for Expedia-WA for a different reason: that (with regard to the second prong of the venue test), Expedia-WA has committed acts of infringement in Delaware *and* has a regular and established place of business in Delaware—in light of the Bear, Delaware location of a franchisee of Expedia-WA's wholly-owned subsidiary. (D.I. 27 at ¶¶ 33-39) With the Motion, Defendants argue that both of Plaintiff's arguments are without merit and that the venue Defendants should be dismissed from this case for lack of venue. (D.I. 32 at 1, 3, 6)

At oral argument on the Motion, Plaintiff further clarified its position. It repeatedly explained that, at this stage, it is not asking the Court to rule definitively that Plaintiff has established venue under the first or second prongs of the relevant test. Instead, Plaintiff's request is that the Court simply now find that Plaintiff has made a sufficient record on these issues to warrant venue-related discovery. (Tr. at 30, 43, 54) In light of this, below the Court will analyze Plaintiff's respective arguments (and Defendants' responses thereto) under the "clearly frivolous" standard for venue-related discovery.

### A. Is Venue-Related Discovery Appropriate to Determine if Expedia-WA, Travelscape and Hotels.com are the Alter-egos of Expedia Group?

6

With regard to Plaintiff's first venue-related argument, the Court will begin by setting out the relevant legal standards for establishing that a subsidiary is the alter-ego of its corporate parent. Thereafter, the Court will assess whether Plaintiff has made a sufficient record to demonstrate an entitlement to venue-related discovery as to this issue.

### 1. Law Relating to Alter-ego Status

For venue purposes in patent infringement cases, the residency of one entity may be imputed to another in order to satisfy the first prong of Section 1400(b), including in circumstances where one corporation acts as the alter-ego of another. *Bristol-Myers Squibb Co.*, 2018 WL 5109836, at *3 (noting that a finding that a corporate entity is the alter-ego of another is not a holding that the entity at issue is a resident of two places, but instead that the law allows a court to treat that entity "*as if* it were a resident in a second district") (certain emphasis omitted); *see also Minn. Mining & Mfg. v. Eco Chem, Inc.*, 757 F.2d 1256, 1265 (Fed. Cir. 1985). The United States Court of Appeals for the Third Circuit[5] has held that a legally distinct entity can be the alter-ego of another entity (and thus subject to the court "piercing the corporate veil"): (1) when a court finds that there is a fundamental lack of corporate separateness between the entities; and (2) where this situation also presents an element of either fraud, injustice, or unfairness in the use of the corporate form. *See Trustees of Nat. Elevator Indus. Pension, Health Benefit & Educ. Funds v. Lutyk*, 332 F.3d 188, 194 (3d Cir. 2003); *Bristol-Myers Squibb Co.*;

---

[5]     Both parties cite to federal common law as set out by the Third Circuit in articulating the applicable standard for establishing alter-ego status. (D.I. 32 at 11-12; D.I. 40 at 3-4; Tr. at 7) The Court will utilize that case law here. *See Bristol-Myers Squibb Co.*, 2018 WL 5109836, at *4 n.4 ("The parties agree that Third Circuit law governs, as corporate-veil piercing does not present questions unique to patent law.").

2018 WL 5109836, at *4.[6] In the end, in order to succeed on an alter-ego theory of liability, a

plaintiff must establish that in all aspects of the business, the corporate entities "actually

functioned as a single entity and should be treated as such." *Pearson v. Component Tech. Corp.*,

247 F.3d 471, 485 (3d Cir. 2001).

To determine whether there is a lack of corporate separateness (i.e., whether, here, the

subsidiary corporations are little more than a "legal fiction"), "[t]he Third Circuit considers

multiple non-exclusive factors . . . including":

> [G]ross undercapitalization, failure to observe corporate
> formalities, nonpayment of dividends, insolvency of [subsidiary]
> corporation, siphoning of funds from the [subsidiary] corporation
> by the dominant stockholder, nonfunctioning of officers and
> directors, absence of corporate records, and whether the
> corporation is merely a facade for the operations of the dominant
> stockholder.

*Bristol-Myers Squibb Co.*, 2018 WL 5109836, at *4 (quoting *Pearson*, 247 F.3d at 485). The

presence of a number of these factors can also be sufficient to establish that an element of

injustice or fundamental unfairness is at play. *See Trustees*, 332 F.3d at 194.[7]

---

[6]     Thus, the Third Circuit does not require proof of actual fraud in order to show that
one corporate entity is the alter-ego of another. *Trustees*, 332 F.3d at 194; *T-Jat Sys. 2006 Ltd. v.
Expedia, Inc. (DE)*, C.A. No. 16-581-RGA-MPT, 2017 WL 896988, at *5 (D. Del. Mar. 7,
2017). Where the conduct alleged to justify piercing the corporate veil is that the corporation as
a whole is a "sham" or "façade," however, there is a finding "akin to fraud" is necessary. *Trustees*,
332 F.3d at 194 n.7 (internal quotation marks and citation omitted). Here, although the record is
a bit uncertain on this issue, it does not appear to the Court that Plaintiff is truly asserting that the
venue Defendants were, as a whole, a "sham" or "façade." Thus, the Court will not focus on
whether a showing of actual fraud has been made. *See Blair v. Infineon Techs. AG*, 720 F. Supp.
2d 462, 471 & n.14 (D. Del. 2010).

[7]     Although the Court is focusing on the standard of proof necessary to justify venue
discovery here, it notes that ultimately, Plaintiff would be required to show by clear and
convincing evidence that the venue Defendants are alter-egos of Expedia Group. *Trustees*, 332
F.3d at 194; *Bristol-Myers Squibb Co.*, 2018 WL 5109836, at *4. That showing is "notoriously
difficult for plaintiffs to meet[.]" *Pearson*, 247 F.3d at 485.

## 2. Analysis of Plaintiff's Showing Regarding Alter-ego Status

Next, the Court analyzes Plaintiff's showing with regard to the alter-ego issue.

In that regard, the Court first addresses the relevant factors that the Third Circuit typically uses to analyze corporate separateness. On this front, Plaintiff acknowledges that it has not put forward evidence regarding all (or even most) of those factors. (D.I. 40 at 13) But it argues that in its Amended Complaint and otherwise, it has pointed to evidence relevant to at least three of them: (1) "failure to observe corporate formalities," (2) "nonfunctioning of officers and directors," and (3) "whether the corporation is merely a facade for the operations of the dominant stockholder[.]" (*Id.* ("At least those three factors are also present here and support a finding that Expedia Group is an alter-ego of its Subsidiaries.") (citing D.I. 27 at ¶¶ 5-28)) In this regard, Plaintiff highlights the following relevant allegations:

- Expedia Group "controls all hiring for the Subsidiaries, is the majority stock holder, [and] has the ability to enter into binding agreements for all of its Subsidiaries." (D.I. 40 at 14 (citing D.I. 27 at ¶¶ 23, 26, 27-28) (internal citations omitted))

- "Expedia Group and Expedia-WA identify themselves as a single entity in marketing materials, and . . . operate as a single entity during litigation." (*Id.* (citing D.I. 27 at ¶¶ 9, 13, 33))[8] Expedia Group and Expedia-WA also share the same business headquarters address and principal executive offices. (D.I. 27 at ¶ 9)

- Certain individuals work for all Defendant entities. For example, Robert Dzielak serves as the Executive Vice President, General Counsel and Secretary for all Defendants. (*Id.* at ¶ 25) Additionally, the same person—

---

[8]    Defendants also argued that the record shows that Expedia Group operates as a single entity during litigation with Hotels.com. (D.I. 40 at 14 (citing D.I. 27 at ¶¶ 9, 13, 33)) However, the Court cannot find any factual support for that contention in the cited paragraphs of the Amended Complaint.

an "Arbitration Claim Manager" based out of Washington state—appears to handle arbitration and related legal matters for Expedia Group and its subsidiaries. (D.I. 41, ex. 6 at 1; *id.*, ex. 7 at 1 (cited in D.I. 40 at 14))

- Defendants' Initial Disclosures indicate that Expedia Group employees are the most knowledgeable persons about its subsidiaries' accused products. (Plaintiff's Hearing Presentation, Slide 25)

Moreover, Plaintiff points to other allegations that, even if not directly related to those three factors, otherwise purportedly go to show that "Expedia Group and its Subsidiaries are alter-egos and function as a single 'entity.'" (D.I. 40 at 14) These include:

- Expedia Group "receives all financial benefits that its Subsidiaries have earned[.]" In this regard, Defendants "attached to the Amended Complaint evidence indicating that Expedia Group's SEC filings reported the Subsidiaries' revenue and profits as its own." (D.I. 40 at 14 (citing D.I. 27 at ¶ 27; *id.*, ex. B; D.I. 41, ex. 1))

- Expedia Group "requires its Subsidiaries to sign as 'subsidiary guarantors' for its debt, implying that Expedia Group has sufficient control over its Subsidiaries to require them to cover its debt, in the event of a default." (D.I. 40 at 14 (citing D.I. 27 at ¶¶ 23-24))

- Expedia Group has "held itself out in litigation to be the owner of its Subsidiaries' websites." (D.I. 40 at 15 (citing *id.*, ex. E at 2))

With regard to the corporate separateness factors, the record is admittedly not robust. As noted above, no evidence has been put forward as to a number of the factors. And even as to some of the above-referenced evidence identified by Plaintiff, it may well be that (as Defendants suggest) it "merely describe[s] indicia of a typical parent-subsidiary relationship." (D.I. 32 at 14) Moreover, the Court is certainly skeptical that such large, well-funded and well-known corporations like the venue Defendants could ultimately be found to be so completely

interconnected with Expedia Group that their separate existence would amount to nothing more than a legal fiction. *Cf. T-Jat Sys. 2006 Ltd. v. Expedia, Inc. (DE)*, C.A. No. 16-581-RGA, 2017 WL 896988, at *4-5 (D. Del. Mar. 7, 2017) (suggesting that where the plaintiff had alleged facts regarding just two of the eight corporate separateness factors regarding whether Expedia Group and Expedia-WA were alter-egos, this may not have been enough to successfully plead an alter-ego claim). Nevertheless, the above-referenced evidence does provide some indication that: (1) Expedia Group has a very close relationship with its subsidiaries and (2) there is some amount of real overlap between the parent and its subsidiaries. With the bar for jurisdictional discovery being so low, the Court could not say at this point that Plaintiff's allegations as to corporate separateness are "clearly frivolous."[9]

However, the record is different as to the second element of the alter-ego analysis—i.e., the requirement that Plaintiff plead facts demonstrating that any closeness or intermingling of the corporate forms presents a clear element of fraud, injustice, or unfairness. On this front, Plaintiff argues that it has shown that an "injustice" would occur if the Court granted the Motion on lack-of-venue grounds. (D.I. 40 at 10) More specifically, Plaintiff argues that it alleged that

---

[9]     The result in *Energy Marine Servs., Inc. v. DB Mobility Logistics AG*, Civil Action No. 15-24-GMS, 2016 WL 284432 (D. Del. Jan. 22, 2016), (D.I. 32 at 14-15), is not necessarily to the contrary. In *Energy Marine*, this Court found that the plaintiff had pleaded insufficient facts to show that a parent and its subsidiaries were alter-egos, where the plaintiff pleaded "no facts asserting that [the entities] were undercapitalized, did not pay dividends, employed non-functional directors in subsidiaries, siphoned funds, or failed to keep reasonable corporate records." 2016 WL 284432, at *3. Although the plaintiff had alleged that the parent was the dominant shareholder of the subsidiary and that the two entities shared common branding, the *Energy Marine* Court found that these facts alone could not suffice to meet the plaintiff's burden. Here, however, Plaintiff has pleaded a greater number of relevant facts regarding the lack of corporate separateness than were at issue in *Energy Marine*. And, more importantly, the *Energy Marine* Court did not address the standard for granting venue-based discovery, which is all that is at issue here.

11

Expedia Group "controls the technology of the accused infringing websites and mobile applications." (*Id.* at 11) In that regard, Plaintiff cites to the following facts:

- Expedia Group's 2016 Form 10-K, filed with the United States Securities and Exchange Commission ("Form 10-K"), states that *We operate several technology platforms that support our brands. The Brand Expedia technology platform supports our full-service and multi-product brands, including Brand Expedia . . . [and] Travelocity . . . . The Hotels.com technology platform supports [our] hotel-only offering, including Hotels.com Worldwide[.]*" (D.I. 27, ex. B at 8 (cited in D.I. 27 at ¶ 68 (emphasis added)))

- Expedia Group's 2017 Form 10-K, states that "[a]ll of our transaction-based brands share and benefit from our eCommerce platform infrastructure[.]" (D.I. 41, ex. 1 at 7 (cited in D.I. 40 at 11))[10]

- Certain records purportedly show that Expedia Group exercises "control over hiring of employees, including those responsible for the accused technology." (D.I. 40 at 11) Among these are: (a) records indicating that when one selects the "'Jobs'" link on the venue Defendants' websites, one is directed to a single web page that lists careers for all of Expedia Group's brands; (b) evidence indicating that Expedia Group is the employer of "[d]ata center" employees; and (c) evidence indicating that an Expedia Group executive leads its eCommerce Platform and that Expedia Group hires employees who work on that platform, which powers its travel brands' websites. (*Id.* (citing D.I. 27 at ¶ 28; D.I. 41, exs. 2-3))[11]

---

[10]    Both of these two Expedia Group Form 10-K filings state that "[w]e refer to Expedia [Group] and its subsidiaries collectively as 'Expedia,' the 'Company,' 'us,' 'we' and 'our[.]'" (D.I. 27, ex. B at 1; D.I. 41, ex. 1 at 1) Thus, in the above-cited portions of the Form 10-Ks, at a minimum, Expedia Group is including itself among a group of entities that it says operates or controls certain of its subsidiaries' websites or mobile applications at issue here.

[11]    To be sure, Defendants have contested the assertion that Expedia Group controls the subsidiaries' technology platforms. For example, Defendants have pointed to evidence that indicates, *inter alia*, that Expedia Group is a non-operational holding company that "does not own or operate the server systems associated with any travel websites or mobile applications," including those of the venue Defendants. (D.I. 33 at ¶ 7) That suggests a factual dispute about the extent to whether Expedia Group is in "control" of the venue Defendants' alleged

From there, Plaintiff argues that since Expedia Group-controlled servers are said to fuel the alleged infringement at issue, it would be unjust if "Expedia Group and its Subsidiaries [were] able to abuse the corporate form to shield themselves from infringement by hiding the infringing technology behind various 'travel brand' corporations." (D.I. 40 at 12) Such a result, Plaintiff claims, would "deny [it] the opportunity to take discovery of infringing technology that is being offered by all of Expedia Group's 'travel brands.'" (*Id.*)[12]

The Court concludes that Plaintiff has failed to meet its burden to show that venue discovery is appropriate as to the alter-ego issue, in light of the Plaintiff's minimal showing as to this second alter-ego element. It is not just that nowhere in the Amended Complaint does Plaintiff plead facts directly relating to this "injustice" issue, or that the Amended Complaint does not directly speak to the issue of "injustice."[13] (*See* D.I. 32 at 12-13; Tr. at 13, 50); *cf. T-Jat Sys. 2006 Ltd.*, 2017 WL 896988, at *4-5 (concluding that defendants' motion to dismiss should be granted on the ground that plaintiff had failed to allege sufficient facts to demonstrate how Expedia Group and Expedia-WA were alter-egos, particularly because plaintiff did "not allege

---

infringement. But for our purposes here, Plaintiff's assertions on this score are non-frivolous. Thus, the Court will take them into account in its analysis.

[12] At another point in its briefing where Plaintiff addresses this "injustice" issue, it asserts that "[g]iven IBM's factually supported allegations that Expedia Group controls the servers [of the subsidiary Defendants], it would be unjust to dismiss Expedia Group from this case." (D.I. 40 at 12; *see also id.* at 12-13 ("IBM has alleged Expedia Group controls the underlying technology offered by its 'travel brands,' and it would be unjust to allow Expedia Group to escape liability through hiding behind its Subsidiaries.")) But in its April 11, 2019 R&R, the Court ruled that Expedia Group should not be dismissed from the case, and thus no such "injustice" in that form will occur here.

[13] The word "injustice," for example, is nowhere found in the Amended Complaint. (D.I. 46 at 5)

the second element of fraud or injustice of use of the corporate form"). And it is not just that Plaintiff has cited no case from this Circuit suggesting that the above-referenced consequences are the type of "injustice" that the alter-ego doctrine is meant to redress.[14] It is also that Plaintiff's arguments about the injustice that would befall it here (were the Motion to be granted) do not even really add up. After all, if the Motion is granted and the venue Defendants are dismissed from this case, that does not mean that these Defendants will be able to "shield themselves from infringement" or that Plaintiff would be denied "the opportunity to take discovery of infringing technology that is being offered by" those Defendants. (*See* D.I. 40 at 12) Plaintiff could certainly pursue liability as to these Defendants in another federal district. (Tr. at 11-12) And not only could Plaintiff take discovery as to the venue Defendants' allegedly infringing technology in such other cases, but Plaintiff might well be able to take third-party discovery of the venue Defendants' technologies *in this case*. (*See* D.I. 46 at 6 ("IBM does not explain, however, how IBM will be denied the opportunity to take discovery if corporate

---

[14]     *Cf. Compagnie des Grands Hotels d'Afrique S.A. v. Starwood Cap. Grp. Glob. I LLC*, Civil Action No. 18-654-RGA, 2019 WL 148454, at *5 (D. Del. Jan. 9, 2019) (finding the second element of alter-ego liability sufficiently pleaded, but where the plaintiff pleaded facts plausibly suggesting that one corporate entity took acts to leave a second corporate entity "judgment proof[,]" so that the plaintiff could not recover an arbitration award from the second entity, as such acts "are sufficient to show fraud and injustice"); *Blair*, 720 F. Supp. 2d at 472 (finding that plaintiffs pleaded sufficient facts regarding alter-ego liability, but where as to the second element regarding injustice, plaintiffs' allegations were that the parent corporation "mishandled or misdirected funds and prevented [subsidiary corporations] from honoring [their] obligations to their employees"); *Mobil Oil Corp. v. Linear Films, Inc.*, 718 F. Supp. 260, 269-70 (D. Del. 1989) (applying the alter-ego doctrine and finding that the plaintiff had not demonstrated that an injustice would befall it due to the use of the corporate form, where the corporate form was not alleged to be used to "operate a sophisticated shell game, shuttling assets between entities in an effort to escape the effect of any potentially adverse judgment" and instead where the "injustice" alleged was simply that plaintiff suffered from patent infringement at the hands of a corporate actor).

distinctions are observed and IBM is required to comply with the Federal Rules to obtain discovery."); *see also* Tr. at 11-12)  Were Plaintiff to have to seek redress for the venue Defendants' liability in a different district, or were it to have to seek third-party discovery of their allegedly infringing websites/applications in this case, that might amount to an *inconvenience.* (Tr. at 52)  But there has been absolutely no showing that it would amount to the type of "injustice" that is required to pierce the corporate veil pursuant to Third Circuit case law.

For these reasons, the Court recommends that any request for venue discovery as to Plaintiff's alter-ego argument be denied.

### B. Is Jurisdictional Discovery Warranted as to Expedia-WA Regarding the Second Prong of Section 1400(b)?

As noted above, Plaintiff makes an alternative argument for venue as to Expedia-WA: that venue is appropriate under the second prong of Section 1400(b).  In that regard, Plaintiff first alleges that Expedia-WA has committed acts of infringement in this district, a fact that Defendants do not contest for purposes of the Motion. (D.I. 40 at 5; Tr. at 38)  Then, Plaintiff asserts that it has also made a sufficient showing as to the other requirement of Section 1400(b)'s second prong:  i.e., whether Expedia-WA has a "regular and established place of business" in Delaware.  As to that "regular and established place of business" requirement, which *is* in dispute here, the evidence must show that there is:  (1) a physical place in the district; (2) that is a regular and established place of business; and (3) that is the place *of the defendant* (here, Expedia-WA).  *In re Cray, Inc.*, 871 F.3d 1355, 1362-63 (Fed. Cir. 2017); *T-Jat Sys. 2006 Ltd. v. Expedia, Inc. (DE)*, No. 16-cv-581-RGA, 2019 WL 351252, at *2 (D. Del. Jan. 29, 2019).

It is not contested that Plaintiff has identified a physical place in Delaware, nor that this place is a regular and established place of business.  The dispute is over whether the location in

question—the Bear, Delaware office (the "Bear, Delaware location") of a company known as

Great Escapes, Inc. ("Great Escapes")—is a regular and established place of business *of*

*Expedia-WA.* (D.I. 33 at ¶ 21; D.I. 40 at 17) As to this inquiry, relevant considerations include:

> (i) [W]hether the defendant owns or leases the place, or exercises
> other attributes of possession or control over the place, (ii) whether
> the defendant conditioned employment on an employee's
> continued residence in the district or the storing of materials at a
> place in the district, (iii) whether the defendant holds out a place
> for its business, such as by list[ing] the alleged place of business
> on a website, or in a telephone or other directory[,] or plac[ing] its
> name on a sign associated with or on the building itself, and (iv)
> the nature and activity of the alleged place of business of the
> defendant in the district in comparison with that of other places of
> business of the defendant in other venues.

*T-Jat Sys. 2006 Ltd.*, 2019 WL 351252, at *2 (internal quotation marks omitted, emphasis

omitted) (quoting *In re Cray*, 871 F.3d at 1363-64).

Below, the Court will set out the facts of record with regard to this Bear, Delaware

location. Thereafter, it will analyze whether Plaintiff has made a sufficient showing to obtain

venue discovery with regard to this issue.

### 1. Record Regarding the Bear, Delaware Location

Great Escapes is a franchisee of CruiseShipCenters USA, Inc. d/b/a Expedia

CruiseShipCenters ("CSCI"). (D.I. 33 at ¶ 21)[15] CSCI, in turn, is a Nevada corporation, with its

principal place of business in Washington state. (*Id.* at ¶ 17) CSCI is a wholly-owned subsidiary

of Expedia-WA. (*Id.*) CSCI has been offering franchises specializing in cruise vacations in the

United States since April 2008. (*Id.*) CSCI is referred to as "Expedia CSC" on the website

---

[15]     Great Escapes is one of approximately 89 CSCI franchise locations in North
America. (D.I. 33 at ¶ 18)

www.cruiseshipcenters.com. (*Id.* at ¶ 20)  Additionally, the Bear, Delaware location of Great

Escapes has the combination mark "Expedia® CruiseShipCenters®" depicted on a sign on its

storefront. (*Id.*; D.I. 27 at ¶¶ 36-37)

CSCI also has a relationship with CruiseShipCenters International, Inc. ("CII"), a

Canadian corporation that is also an indirect subsidiary of Expedia-WA. (D.I. 33 at ¶ 15)[16]  CII

operates a travel agency and franchises travel agencies specializing in cruise vacations; it has 166

franchises located in Canada operating under the name Expedia CruiseShip Centers. (*Id.* at ¶ 16)

Expedia-WA and CII license certain marks to CSCI, which CSCI then licenses to its

franchisees (like Great Escapes), "includ[ing] the combination mark[s] . . . 'Expedia®

CruiseShipCenters®' (word mark) and 'Expedia® CruiseShipCenters®' (design mark)." (*Id.* at

¶ 20)  CII owns the CruiseShipCenters® mark, while Expedia-WA owns the Expedia® mark.

(*Id.*)

According to a declaration submitted by Expedia Group's Senior Vice President, Legal

and Assistant Secretary Michael Marron (the "Marron declaration"), the business locations of

CSCI franchisees, including the Great Escapes business location in Bear, Delaware are

"independently owned and operated." (*Id.* at ¶ 19)  According to that declaration, neither

Expedia-WA nor any other Expedia Group corporate family member "holds out [that Bear,

Delaware location] as its own place of business or otherwise conducts business from [that

location.]" (*Id.*)  The Marron declaration states that Expedia-WA does not own or lease that

location, does not have any operations, personnel or equipment at that location, does not exercise

---

[16]     CII is a wholly-owned subsidiary of CSC Holdings, Inc., also a Canadian
corporation, which is in turn a subsidiary of Expedia-WA. (D.I. 33 at ¶ 15)

control over the location, does not "market or advertise itself or its products" through the location, and does not otherwise conduct business from that location. (*Id.* at ¶ 21)

However, in its Amended Complaint, Plaintiff pleaded that Expedia-WA "[c]ustomers are able to make and purchase travel arrangements by visiting the [Bear, Delaware location,]" (D.I. 27 at ¶ 37), and that "Expedia-WA, through [CII[17]], provides online and in-person travel reservations relat[ing] to cruises as well as other travel-related services to consumers and local partners . . . through the store located [in Bear, Delaware,]" (*id.* at ¶ 39).

Moreover, Plaintiff has pointed to certain merits-based discovery it has obtained in this case in support of its venue argument. These documents include the following content:

- An e-mail from an Expedia employee[18] that seems to suggest that calls relating to Expedia cruises will go to "CSC agents" who "will handle the customer soup to nuts" and who will use a "customer authentication process that is built on the Expedia path." (D.I. 97 at 2 & ex. 1 at EXPEDIA_WA_00305522) That same e-mail notes that "CSC agents" will be provisioned as "EXP agents[.]" (*Id.*)

- A 2015 presentation that notes that "[c]ontent processes at Expedia and Cruise Ship Centers today are completely separate which has created inefficiencies and has led to missed opportunities" and suggesting that "Expedia" and "Cruise Ship Centers" have (1) "begun converging on common supply[;]" (2) use a tool that now enables them to "focus engineering effort on a true common supply architecture"; and (3) now intend to act as "[o]ne [t]eam[.]" (D.I. 97 at 2 & ex. 2 at EXPEDIA_WA_00068427)

---

[17]    In the Amended Complaint, Plaintiff alleged that the Bear, Delaware location was owned and operated by CII. (D.I. 27 at ¶¶ 34-36) As of the time of oral argument, however, Defendants had put forward the Marron declaration, which asserted that the franchisee who operated the location (Great Escapes) was a franchisee of *CSCI*, not CII. (D.I. 33 at ¶ 21)

[18]    It is not clear if this employee works for Expedia Group or Expedia-WA. (D.I. 97, ex. 1 at EXPEDIA_WA_00305522)

18

- An Expedia document from 2016 that states that Expedia is "swapping out [its] current Cruise provider . . . with CSC" and that it is "[o]nboarding CSC as the Cruise provider" through "leveraging the current CSC data flow into Expedia[.]" (D.I. 97 at 2 & ex. 3 at EXPEDIA_ WA_00304059)

- An Expedia document[19] titled "How Expedia Gets Notified About Cruise Bookings" states that "Expedia user[s]" use the "CSC site" to book cruises, and notification of such booking and of payment is then sent to an "Expedia Trips Database[.]" (D.I. 97 at 3 & ex. 4 at EXPEDIA_ WA_00337816)

It appears (though it is still a bit unclear to the Court) that when the documents above make reference to "CSC" they are referring to CII, not CSCI. (Tr. at 39, 48)

## 2. Analysis of Plaintiff's Showing

In the Court's view, Plaintiff has made a sufficient showing to at least warrant venue discovery on the question of whether the Bear, Delaware location is Expedia-WA's place of business. The Court so concludes for two primary reasons.

First, Plaintiff has put forward evidence suggesting that "CSC" (whom the Court will assume for purposes of this Motion to be CII) and its agents work on behalf of Expedia-WA to handle and process Expedia-WA customer requests in order to book cruises. Indeed, the documents that Plaintiff has cited above can easily be read to suggest that "CSC agents" are: (1) servicing Expedia-WA's customers; (2) working as part of "one team" with Expedia-WA employees; (3) using Expedia-WA's technology to do so; (4) all for the financial benefit of, *inter*

---

[19]     As to this and other documents cited in this paragraph, it is not clear on the face of the document if the document is one in the possession of Expedia Group or Expedia-WA. Plaintiff asserts that the documents relate to the business of Expedia-WA, (D.I. 97 at 2-3), however, and that is certainly a fair inference based on the record at hand.

*alia*, Expedia-WA. That evidence would surely be enough to warrant jurisdictional discovery over whether the office of a franchisee of CII in fact does the business of Expedia-WA.

Again, the Court understands that it may be that the "CSC" referred to in the above-referenced documents is *CII* (the *Canadian* indirect subsidiary of Expedia-WA that, through franchisees, operates travel agencies specializing in cruise vacations), as opposed to *CSCI* (the *U.S.-based* indirect subsidiary of Expedia-WA that, through franchisees like Great Escapes, operates travel agencies specializing in cruise vacations). (D.I. 33 at ¶¶ 15-18; Tr. at 39, 48) And so it may be that what these documents speak to is how those working for *CII* do the business of Expedia-WA in *Canada* (and not how those working for *CSCI* do the business of Expedia-WA in the *United States*, including in Delaware). But even if that is so, in the Court's view, the evidence would still be relevant to whether a franchise location of CSCI could be said to be a place of business of Expedia-WA. In other words, if in Canada, Expedia-WA works through the agents of CII to book cruises for Expedia-WA customers and process payments that redound to Expedia-WA's benefit, then it stands to reason that in the United States, Expedia-WA may be doing the same thing with regard to the agents of CSCI (including at the Great Escapes office in Bear, Delaware). (Tr. at 40 (Plaintiff's counsel noting that "it looks like what is happening is that the Expedia companies on the Expedia website, when they call up and say I have a question about my cruise ship reservation, they get referred to the franchisees wherever they are, in Delaware or anywhere else"))

Second, the fact that the "Expedia® CruiseShipCenters®" mark is on the Bear, Delaware Great Escapes storefront also supports an inference that this business location is one of Expedia-

WA.[20] Certainly, that fact at least suggests that an Expedia-related entity is connected, in some way, with the work that goes on in this building. But perhaps more importantly, the record shows that the mark on that office is originally licensed from both Expedia-WA and CII. (D.I. 33 at ¶ 20) This, in turn, provides a further link between the work of CSCI franchisees (like Great Escapes) and the work of CII and its franchisees for Expedia-WA. That is, if (1) both CII and CSCI work through their franchisees, and (2) both utilize the same Expedia marks in their business, then (3) that is another piece of evidence suggesting that CSCI franchisees do work in the United States for Expedia-WA that is similar to the work CII franchisees in Canada do for Expedia-WA.

To be sure, there are many unanswered questions in the record about the relationship between the Bear, Delaware location and the business of Expedia-WA. It may ultimately be difficult for Plaintiff to show that this location affiliated with Great Escapes is also a place of business of a separate corporate entity, Expedia-WA (i.e., the parent of Great Escapes' franchisor). But such a showing is not impossible. *See Javelin Pharms, Inc. v. Mylan Labs. Ltd.*, C.A. No. 16-224-LPS, 2017 WL 5953296, at *4 (D. Del. Dec. 1, 2017) ("In the Court's view, it follows from *Cray* that the 'place' of a corporate affiliate or subsidiary of a named defendant may, in at least some circumstances, and similar to the place of a defendant's employee, be treated as a 'place of the defendant.'"); *see also Blitzsafe Texas, LLC v. Bayerische Motoren Werke AG*, CIVIL ACTION NO. 2:17-CV-00418-JRG, 2018 WL 4849345, at *10 (E.D. Tex.

---

[20] Were this the only piece of evidence in the record, venue discovery might not be warranted. *Cf. T-Jat Sys. 2006 Ltd.*, 2019 WL 351252, at *5 (concluding that where the "only alleged connection" between Expedia-WA and the Delaware location at issue was the use of Expedia's logo on the location's storefront, that was insufficient to show that Expedia-WA engaged in business from that location, or to warrant discovery).

Sept. 6, 2018) (finding that the business location of a franchisee of defendant was also a place of business of the defendant within the context of Section 1400(b)).[21] And, as the Court has noted above, the bar for jurisdictional discovery is a low one. On these facts, Plaintiff has exceeded that bar. Therefore, the Court finds that jurisdictional discovery is warranted on the question of whether the Bear, Delaware location is a place of business of Expedia-WA.[22]

## IV.   CONCLUSION

For the foregoing reasons, the Court: (1) recommends that Defendants' Motion be GRANTED, to the extent that it seeks a finding that venue does not exist as to Defendants Hotels.com and Travelscape in this District; (2) recommends that, as to the question of whether all claims against Defendant Expedia-WA should be dismissed for improper venue, the Motion be DENIED WITHOUT PREJUDICE; and, relatedly (3) ORDERS that jurisdictional discovery should occur on the question of whether the Bear, Delaware location is a place of business of Expedia-WA.[23] With regard to Defendants Hotels.com and Travelscape, the Court recommends

---

[21]    Defendants suggest that in order for Great Escapes' location in Bear, Delaware to be considered a regular and established place of business of Expedia-WA for purposes of the second prong of the venue test, Plaintiff would have to: (1) show that Great Escapes/CSCI was the alter-ego of Expedia-WA; and thus (2) allege "facts relating to [the] necessary components of an alter ego theory in Delaware, including fraud or similar injustice in use of the corporate form and lack of corporate separateness." (D.I. 32 at 9) The Court is not sure that this is correct, and Defendants have not cited a case that says as much. It may well be that a place of business can be owned or leased by one entity, but still be the place of business of a second entity for purposes of the second prong of the test for venue, without the first entity and the second entity necessarily amounting to alter-egos under the law.

[22]    By separate Order, the Court will address the scope and timing of such discovery with the parties.

[23]    As was previously noted, with its Motion, Defendants had also argued that the Court should dismiss all claims against Expedia Group. (D.I. 32 at 15-17) In response, Plaintiff argued that Expedia Group should not be dismissed, for three different reasons: (1) Plaintiff sufficiently pleaded facts showing that Expedia Group's own travel reservation services, offered

that the District Court GRANT Plaintiff's request that the actions against these two Defendants be transferred to the Northern District of Texas and the District of Nevada, respectively. (D.I. 40 at 19 (noting that venue in those districts as to these Defendants is undoubtedly proper under Section 1400(b)))[24]

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1. The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b)(2). The failure of a party to object to legal conclusions may result in the loss of the right to de novo review in the district court. *See Henderson v. Carlson*, 812 F.2d 874, 878-79 (3d Cir. 1987); *Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006).

The parties are directed to the Court's Standing Order for Objections Filed Under Fed. R. Civ. P. 72, dated October 9, 2013, a copy of which is available on the District Court's website, located at http://www.ded.uscourts.gov.

---

on its subsidiaries' websites, directly infringed the patents-in-suit; (2) Plaintiff sufficiently pleaded facts showing that each of the other Defendants were Expedia Group's alter-ego, and that Expedia Group thus infringes through these subsidiaries; and (3) Plaintiff had sufficiently pleaded facts showing that each of the other Defendants were Expedia Group's agent, and that Expedia Group thus infringes through the acts of those agents. (D.I. 40 at 2, 5; Tr. at 27) In its April 11, 2019 R&R, the Court recommended that the Motion be denied as to Expedia Group on the first ground set out above: that Plaintiff had sufficiently pleaded that Expedia Group itself directly infringed the patents-in-suit. (D.I. 104 at 8) In light of this ruling, the Court considers the other subsidiary arguments raised by Plaintiff about why Expedia Group should remain a Defendant to be moot. (Tr. at 27) Thus, the Court has now resolved the entirety of the Motion.

[24]    In their reply brief, Defendants failed to specifically address Plaintiff's request for transfer as opposed to dismissal. (D.I. 46) Transfer, as opposed to dismissal, would better allow for a timely disposition of these cases on the merits. *See In re First Solar, Inc.*, C.A. No. 12-417-GMS-CJB, 2013 WL 4051739, at *2 n.3 (D. Del. July 12, 2013).

Dated:  July 24, 2019

Christopher J. Burke
UNITED STATES MAGISTRATE JUDGE