

Kelly E. Farnan

302-651-7705
Farnan@rlf.com

August 30, 2019

**VIA ELECTRONIC-FILING**
The Honorable Christopher J. Burke
U.S. District Court for the District of Delaware
844 N. King Street
Wilmington, DE 19801

        Re:   *International Business Machines Corporation v. Expedia, Inc., et al.*,
                C.A. No. 17-1875-LPS-CJB (D. Del.)

Dear Judge Burke:

      Pursuant to the Court's August 21, 2019 Oral Order (D.I. 193), Plaintiff International Business Machines Corporation ("IBM") and Defendants Expedia Group, Inc. (f/k/a Expedia, Inc.), Expedia, Inc., HomeAway.com, Inc., Hotwire, Inc., Orbitz Worldwide, Inc., and Orbitz LLC ("Defendants") provide proposals regarding limited reciprocal email discovery in this case.

**IBM's Proposal**

      IBM proposes that each Defendant[1] search and produce emails from five custodians identified by IBM, up to an overall limit of twenty custodians across all Defendants, using up to ten search terms chosen by IBM. IBM will agree in advance to a set of terms for a privilege filter to remove potentially privileged emails before review of emails responsive to IBM's terms. IBM further proposes that the parties confer and narrow search terms if the number of emails from any custodian exceeds a certain number (*e.g.*, 1000 unique emails) after the privilege filter is applied. This approach guarantees that no party is subjected to an unbearably large number of emails that may need to be reviewed and also ensures that IBM is not prejudiced by being the only party subjected to email discovery. This approach also addresses Defendants' complaints that IBM's terms are too broad or are at least broader than terms applied in *Priceline*.

      IBM also proposes that IBM search and produce emails from five custodians identified by Defendants using up to ten search terms chosen by Defendants, subject to the same conditions above for email discovery from Defendants.

      IBM's proposal provides a middle ground that was acknowledged by the Court and by Defendants during the teleconference that led to the present proposal. August 19, 2019 Teleconference Transcript ("Tr.") at 47:9-48:15. In particular, IBM's proposal is in line with Defendants' counsel's statement that any email discovery "should be mutual and it should be in addition to Priceline [*sic*] Groupon e-mails." *Id.* at 48:12-15.[2] And IBM's proposal limits the

---

[1] IBM did not seek emails from Hotels.com L.P. or Travelscape LLC in view of the Court's Report and Recommendation that they be transferred. (*See* D.I. 160; D.I. 177 at 1 n.1.) The Court did not recommend transfer for Expedia-WA, and Expedia-WA should produce emails.

[2] Defendants' prospective request for costs and fees should be rejected in view of the mutuality of IBM's proposal. Both IBM and Defendants will incur, and should bear, costs and fees for mutual new email discovery.

The Honorable Christopher J. Burke
August 30, 2019
Page 2

numbers of custodians per party and the number of search terms, following the Court's suggestion of "maybe not 10 custodians, but five, maybe not 20 search terms, but 10 or 7." *Id.* at 47:15-20. Those limitations are reasonable and conducive to efficient email discovery.

IBM has produced a large volume of emails that were identified in prior litigations with targeted search terms, and IBM's proposal provides IBM with reciprocal discovery from Defendants in the interest of fairness. IBM produced today nearly 15,000 emails that were produced in the *Priceline* and *Groupon* litigations pursuant to the Court's Order (D.I. 193). While the parties in this case originally agreed not to undertake new email discovery, IBM's recent production changes the landscape of email discovery and provides a significant strategic advantage to Defendants. By Defendants' own characterization, they have now obtained thousands of IBM's emails that are directly relevant and pertinent to the issues in this case. (D.I. 175 at 4.) IBM's proposal is geared towards shifting the balance back towards even, providing IBM with an opportunity to conduct targeted discovery on Defendants' emails.

Defendants' arguments regarding the volume of documents already produced do not counterbalance the prejudice to IBM as the only party subject to email discovery. Defendants previously stated that they produced "about 6,000 e-mails" but characterized them as "just sort of ancillary e-mails relevant to technical documents" that were located in response to IBM's document requests. Tr. at 49:18-23. Defendants' comparison of the parties' production volumes below ignores that there are multiple Defendants in this case and that Defendants have not raised issues regarding the size of IBM's production. Defendants' production of "ancillary" emails and technical documents does not lessen the significant advantage they enjoy on email discovery.

IBM should be afforded the opportunity to propose limited and targeted search terms to round out email discovery, including into non-technical issues such as willfulness. That need is particularly highlighted by the fact Defendants' counsel has apparently conducted their own searches to produce selected emails, including emails intended to fend off willfulness allegations. Tr. at 49:9-18. Those emails were apparently produced by Defendants' counsel searching their own emails, not by searching any of Defendants' employees' emails. (D.I. 177 at 3.) In contrast, the nearly 15,000 emails IBM has now produced were located by searching IBM's employees' emails. IBM requests limited discovery into Defendants' emails to explore the defenses Defendants plan to advance using their counsel's selected emails, including discovery into Defendants' employees' emails with search terms relevant to willfulness.

Defendants have voiced concerns regarding the burdens of searching and producing emails, but IBM's proposal is specifically designed to avoid any undue burden. If the parties agree on a reasonable number of unique emails to be reviewed, modern document review platforms and experienced document review firms make the task imminently manageable and not the burden it may have once been. IBM believes the volume of documents it is requesting could be reviewed and produced within two or three weeks. For their part, Defendants have refused to engage in any productive discussions that could manage the burdens Defendants lament. Defendants' complaints below regarding specific search terms proposed by IBM over a month ago could have already been dealt with long before now had Defendants engaged in any such discussions. Defendants' sole objective appears to be to leverage the crunch of time so they can proceed to trial with IBM's emails while IBM is deprived of the same discovery.

IBM requests that the Court adopt IBM's proposal to provide a middle ground on email discovery now that Defendants have obtained a large volume of IBM's emails. That middle ground reduces the current prejudice to IBM and places reasonable restrictions on the scope of email discovery to ensure the parties can complete email search and production by mid-October.

The Honorable Christopher J. Burke
August 30, 2019
Page 3

**Defendants' Proposal**

Defendants request that the Court find—as the parties agreed at the outset of this case—that new email discovery is unnecessary and unwarranted. IBM does not seek new email discovery based on the needs of the case, but rather as a punitive measure against Defendants for successfully seeking an order compelling the withheld emails from IBM's previous litigations.

As an initial matter, **IBM's proposal for new email discovery is broader than the email discovery permitted in *Priceline*.** In *Priceline*, email discovery was limited to five custodians per party and "no more than ten search terms to be used with all custodians." Ex. 1, *Priceline*, D.I. 74 at 5-7. "Terms" was defined narrowly to prevent disjunctive search string combinations that would otherwise broaden the search. *Id*. at 6-7. In this case, IBM proposes the *same* number of custodians per party and ignores the *Priceline* definition of "terms" by proposing ten search strings full of disjunctive combinations that would exceed (by an order of magnitude) the number of terms permitted in *Priceline*. *See* D.I. 177, Ex. 8 (July 24, 2019 Letter from M. Matulewicz-Crowley to J. Gray) (setting forth IBM's proposed email discovery). IBM thus seeks to impose greater burden and expense on Defendants than IBM itself endured in *Priceline*.

Additionally, IBM made no attempt to narrow its email discovery proposal in this case as the Court instructed (D.I. 193). Instead, IBM proposes the same email discovery that it demanded from Defendants in July in exchange for the *Priceline* and *Groupon* emails. *See* D.I. 177, Ex. 8; Ex. 2 (Aug. 22-23, 2019 Emails from M. Matulewicz-Crowley to J. Gray) (referring to IBM's July 24, 2019 letter as IBM's proposal pursuant to the Court's Order (D.I. 193)). IBM thus asks that Defendants be required to pay the full ransom IBM originally demanded for access to relevant, pre-packaged documents that Defendants were forced to obtain through a motion to compel.[3]

The Court should find that the parties' Rule 26(f) agreement precludes IBM's eleventh-hour request for new email discovery. The parties agreed that new email discovery is unnecessary with full knowledge of—and despite—the parties' dispute about whether the previously produced *Priceline/Groupon* emails were independently discoverable. Alternatively, the Court should find that IBM's proposed new email discovery is disproportionate to the needs of the case and that requiring Defendants to engage in new email discovery at this late stage would impose undue burden and expense. *See* Fed. R. Civ. P. 26(b)(1).

For context, Defendants have produced over **650,000** documents to date. IBM has produced approximately **26,000** documents. Defendants understand that IBM is producing approximately **15,000** emails from the *Priceline* and *Groupon* cases pursuant to the Court's Order (D.I. 193). Those relevant emails, which IBM had already collected, searched, reviewed, and produced before—**thus eliminating all burden and expense on IBM for producing them in this case**—will comprise over 35% of IBM's total production in this case. Requiring IBM to produce such emails was plainly warranted under Rule 26(b)(1). Defendants, on the other hand, have already produced over 650,000 documents and terabytes of additional data, including source code for their entire websites, at extraordinary expense. IBM's request to further require Defendants to

---

[3] During the meet and confer process pursuant to the Court's Oral Order (D.I. 193), IBM initially proposed the 10 search strings and 19 total custodians identified in its July 24, 2019 letter. *See* Ex. 2. IBM has since modified its proposal to be broader and more ambiguous by failing to specify its proposed search terms or strings and permitting a total of 20 custodians of Defendants.

The Honorable Christopher J. Burke
August 30, 2019
Page 4

engage in new email discovery, particularly at this late stage, is grossly disproportionate to the needs of the case and would impose substantial undue burden and expense on Defendants.

As a practical matter, any new email discovery would wreak havoc on the two months remaining in fact discovery. Any new email discovery must allow time for Defendants to collect the email files of identified custodians, run search terms, negotiate with IBM to narrow terms that result in large numbers of irrelevant documents, and review all resulting emails for production. Such a process would ordinarily take over two months standing alone, but IBM asks the Court to order such discovery to somehow occur over the next 60 days in parallel with 45 IBM-noticed fact depositions and multiple Rule 30(b)(6) depositions of Defendants. IBM's suggestion that only "two to three weeks" would be necessary to conduct its proposed new email discovery is preposterous and ignores the significant pre- and post-search time and effort that would be required. There is no practical way to conduct new email discovery under the current schedule (*see* D.I. 60), and IBM does not even attempt to offer a viable procedure or timeline for doing so.

IBM's proposed scope of email discovery also ignores notions of fairness and proportionality. IBM proposes that Defendants search up to five custodians each (up to 20 total custodians), while IBM searches only 5 custodians, which is unreasonable. In addition to being overly broad, IBM's disjunctive proposed search strings are unlikely to yield non-duplicative relevant information. *See* D.I. 177, Ex. 8 at 2. For example, Defendants have produced numerous iterations of **custom financial reports prepared at IBM's request**, as well as hundreds of Defendants' more general periodic financial documents. *Id.* IBM's effort to also obtain any email referencing "revenue or profit* or earnings or EBITDA and any "site or web* or app* or mobile or service" (proposed search 7) is likely to result in thousands of emails that merely attach already-produced financial information. The same is true for IBM's analytics-related search (proposed search 8), another topic for which Defendants have produced numerous iterations of **custom reports at IBM's request**. As another example, IBM requests any email mentioning marketing and "site or web* or app* or mobile" (proposed search 9), an overly broad search that indiscriminately targets any email relating to marketing. IBM's search strings containing technical terms are also overbroad and unwarranted. *See id*. (proposed searches 1-5). Defendants have produced source code for their entire websites and mobile applications, as well as over 650,000 documents from Defendants' primary sources of technical documents (along with at least 6,000 related emails from those repositories). There is no legitimate need or justification for IBM to demand *any* new email discovery, and Defendants should not be penalized for requesting or obtaining relevant, readily available emails from IBM's prior litigations. IBM's vague and unsupported assertions of "prejudice" and "unfairness" fail to satisfy the requirements of Rule 26(b)(1), which alone should resolve the issue.

If the Court orders new email discovery, the Court should also order IBM to pay all expenses associated with such discovery, including attorneys' fees. *See* Fed. R. Civ. P. 26(c)(1)(B). IBM alone seeks new email discovery in this case, so IBM alone should be required to pay for that new email discovery. Moreover, like Hotels.com and Travelscape, Expedia-WA should be excluded from any order for new email discovery. Expedia-WA is not a proper Defendant in this lawsuit, has not served any discovery requests on IBM, and is likely to be dismissed for improper venue before any new email discovery is complete.

The Honorable Christopher J. Burke
August 30, 2019
Page 5

                                    Respectfully,

                                    */s/ Kelly E. Farnan*

                                    Kelly E. Farnan (#4395)

cc:     Clerk of the Court (via hand delivery)
        Counsel of Record (via electronic mail)